THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IFEOMA DELLIANE CHINEDU OBI, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. 25 C 3096 |
| COOK COUNTY, ILLINOIS; MICHAEL IAN BENDER; CAESAR & BENDER, LLP; LEVING LAW GROUP; ERIC HARTIG; LESLIE POOLE; COOK COUNTY COURT – CIRCUIT COURT 2; JUDGE MATTHEW LINKS; JUDGE ZELLER, and ASSOCIATED PARTIES | ) ) ) ) ) ) ) ) ) | Chief Judge Virginia M. Kendall |
| *Defendants.* | ) ) | |

**OPINION AND ORDER**

Plaintiff Ifeoma Delliane Chinedu Obi, proceeding *pro se*, first filed a Complaint in this Court on March 24, 2025 alleging that the lawyers, judges, and "associated parties" involved in a state court custody proceeding between herself and her former partner, Joseph Orellana, systematically abused the judicial process, resulting in violations of her constitutional rights and the "prolonged obstruction" of her parental rights. (Dkt. 1 at 1). Obi also applied to proceed *in forma pauperis*, which the Court denied on April 7, 2025. (Dkt. 23). On July 1, 2025, Obi filed a new Complaint and paid the mandatory filing fee. (Dkt. 45; Dkt. 46). Five Defendants have now moved to dismiss Obi's Complaint.[1] (*See* Dkt. 71; Dkt. 73). All five move to dismiss for failure to state a claim and lack of subject matter jurisdiction. (*Id.*) The Bender Defendants also argue that

---

[1] Defendants Michael Ian Bender and Caesar & Bender, LLP (the "Bender Defendants") filed the first Motion to Dismiss. (Dkt. 71). Defendants Eric Hartig, Lesie Poole, and the Law Offices of Jeffry M. Leving, Ltd., (the "Leving Defendants") filed the second. (Dkt. 73).

1

dismissal is proper for insufficient service of process. (Dkt. 71 at 1–2). For the below reasons, both motions [71] [73] are granted.

## BACKGROUND

Obi and Orellana were previously engaged and have a minor son together, L.O. (Dkt. 46 at 2). In May 2020, Orellana filed a Petition for Allocation of Parental Responsibilities in Cook County Circuit Court. (*Id.*; Ex. 1, Dkt. 72 at 17). Defendant Michael Ian Bender was the court-appointed guardian *ad litem*, and the Leving Defendants represented Orellana in the custody proceedings. (Dkt. 72 at 1; Dkt. 73 at 1). The state court held an in-person hearing on December 7, 2022, which Obi alleges was "not officially recorded or transcribed." (Dkt. 46 at 2). Moreover, Obi claims that Bender possessed "critical video evidence" demonstrating that Orellana misrepresented facts to the Court and that he worked alongside the Leving Defendants to willfully suppress that evidence. (Dkt. 46 at 2). Obi further contends that jurisdiction in Illinois was improper for the entirety of the custody proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 750 Ill. Comp. Stat. 36/101 *et seq.*, because L.O. was only visiting Orellana in Illinois temporarily, and permanently resided with her in Tulsa, Oklahoma. (Dkt. 50 at 3).[2] Ultimately, Cook County Circuit Judge Matthew Link—also a named Defendant in this case—issued a final judgment for the allocation of parental responsibilities on December 22, 2022. (*See generally* Ex. 2, Dkt. 72 at 37–53). Orellana was awarded primary custody of L.O., and Obi's parenting time was limited to one day per week. (Ex. 2, Dkt. 72 at 44, 46; Dkt. 50 at 5).

---

[2] The Court notes that, in addition to her Complaint, (Dkt. 46), Obi filed a "Supplemental Complaint," which she intends to build on the first, (Dkt. 50). But "there can be only one operative complaint in the case." *Boclair v. Baldwin*, 2017 WL 6813694, at *2 (N.D. Ill. Apr. 28, 2017) (citation modified). When a plaintiff wishes to proceed on new factual allegations or substantive legal claims after exhausting their ability to amend as of right, they must obtain either the opposing party's written consent or leave of court to file one consolidated amended complaint. *See* Fed. R. Civ. P. 15(a)(1)–(2). Nonetheless, considering Obi's *pro se* status, the Court will disregard this technical deficiency and treat both documents as one operative complaint. *See Otis v. Demarasse*, 886 F.3d 639, 644–45 (7th Cir. 2018) (urging leniency with *pro se* litigants who file a second complaint but clearly intend to incorporate the first by reference).

In addition to the jurisdictional and evidentiary issues Obi raises concerning the custody proceedings, she also presents claims ranging from gender-based discrimination to legal malpractice and breach of fiduciary duty. (Dkt. 46 at 3). In all, her Complaint presents eleven causes of action. (*See* Dkt. 46 at 3–5; Dkt. 50 at 11–13). But the throughline of all her filings, and all her claims, is that she wishes for this Court to unwind the entirety of the state court proceedings. She asks the Court to issue an "emergency order for [the] retrieval of" her minor son; assume "exclusive federal jurisdiction over Plaintiff's custody rights and case history"; enter a restraining order against Orellana; "[i]nitiate a federal investigation into the Cook County Courts, GAL Michael Bender, and Leving Law"; and award money damages of more than $250,000,000. (Dkt. 46 at 4–5).

Separately, Obi points to activity on the state court docket that postdates the final custody order. Among other things, she claims that Bender, after having been discharged as guardian *ad litem* "resumed activities in the case and began accruing fees" in June 2024; that Orellana submitted filings in the case without moving to reopen the proceedings; and that Orellana presented unverified dollar amounts to the court, presumably reflecting money Obi was alleged to owe him for child support. (*See* Dkt. 50 at 6–8). In all, she claims these actions are illegal, fold into a broader pattern of "institutional negligence and judicial recklessness," and are alone sufficient to justify reversal. (Dkt. 50 at 6–9).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of claims for "lack of subject-matter jurisdiction." In analyzing a

3

12(b)(1) motion, the court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff must carry his burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). In considering subject matter jurisdiction, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Id.* at 656-57. A court lacking subject-matter jurisdiction must dismiss the action without proceeding to the merits. *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006).

## DISCUSSION

The Court starts and ends its review of Obi's Complaint with subject matter jurisdiction and well-founded principles of abstention that serve fundamental principles of "equity, comity, and federalism." *J.B. v. Woodward*, 997 F.3d 714, 721 (7th Cir. 2021); *see State of Ill. v. City of Chi.*, 137 F.3d 474, 479 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."). Obi's grievances break down into two categories: (1) qualms with the process she was given in the underlying custody proceedings and with the resulting judgment awarding primary custody to Orellana; and (2) the various Defendants' post-judgment litigation conduct in state court, which she views as irregular and unlawful. The *Rooker-Feldman* doctrine deprives this Court of jurisdiction to consider the first category of claims. And general principles of abstention counsel against this Court's exercise of jurisdiction over the second.

I.     *Rooker-Feldman* **Doctrine**

The *Rooker-Feldman* doctrine recognizes that federal district courts "are not vested with appellate authority over state courts." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016). It thus prevents state-court losers from filing cases in federal court "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Only the Supreme Court of the United States can review state court decisions in civil cases. 28 U.S.C. § 1257. Of course, the doctrine is not without bounds. For example, a case will not be barred from federal review simply because it involves factual or legal contentions that were, or could have been litigated in state court. *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018). For questions of that sort, the Court ought to consider the rules of claim and issue preclusion. *Id.* That said, *Rooker-Feldman* does apply to claims that are "inextricably intertwined with the state court determinations." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). The vital question, then, in determining if the *Rooker-Feldman* doctrine applies is whether "the federal plaintiff seeks the alteration of a state court's judgment." *Milchtein*, 880 F.3d at 898.

First, it bears noting that the *Rooker-Feldman* doctrine only applies to final state court judgments—i.e., those that are immediately appealable. Particularly in the child custody context where proceedings may stretch on for many years, this requirement can cause some confusion. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 400 (7th Cir. 2023). If a court enters a "temporary allocation of parental responsibilities before a final allocation judgment" pursuant to 750 Ill. Comp. Stat. 5/603.5(a), for example, that order is not final or immediately appealable and the *Rooker-Feldman* doctrine will not apply. *Id.* at 400 n.2; *see also Woodward*, 997 F.3d at 723 (finding a plaintiff was not a "state-court loser" because he filed his federal complaint when

proceedings over parenting time remained ongoing). But a state court's continuing management of custody issues, after entry of final order, will not stand in the way of the doctrine's applicability. *Hadzi-Tanovic*, 62 F.4th at 400; *see, e.g.*, *Wereko v. Rosen*, 2023 WL 2241989, at *10 (N.D. Ill. Feb. 27, 2023) (recognizing state courts often continue to oversee child custody and child support issues until the at-issue minor reaches the age of eighteen). Obi concedes that the December 22, 2022 state court judgment is final, and the Court's review of that judgment confirms as much. (*See* Dkt. 50 at 5). The order was not a temporary allocation under 750 Ill. Comp. Stat. 5/603.5(a) but rather a final judgment under 750 Ill. Comp. Stat. 5/602.5, .7. (Ex. 2, Dkt. 72 at 38). The state court's continued management of custody and child support-related issues under the same caption does not alter the character of the underlying custody order. Accordingly, Judge Link's order was final for *Rooker-Feldman* purposes.

The remainder of the analysis is relatively straightforward. "Claims that directly seek to set aside a state court judgment are *de facto* appeals that are barred without further analysis." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Obi's allegation make her intentions clear—she wishes to undo the Cook County proceedings that resulted in the loss of custody over her minor child. For example, her first cause of action alleges violations of due process because the Defendants "suppress[ed] evidence, enforce[ed] custody orders without proof, refus[ed] to acknowledge jurisdictional violations under the UCCJEA, and ignore[ed] standard legal protections." (Dkt. 46 at 3). Her remaining claims present various permutations of this umbrella due process violation. (*Id.* at 3–4). And her prayer for relief asks the Court not only to vacate the state court's determination as to custody but also to exercise exclusive jurisdiction over future custody proceedings. (Dkt. 46 at 4–5; Dkt. 50 at 11–13).

These facts, taken directly from the Complaint, completely undercut Obi's argument that she "is not asking this Court to meddle in a family dispute," but rather seeking to vindicate her federal rights. (Dkt. 78 at 9; *see* Dkt. 79 at 31). Her claims that the state judgment was the product of judicial mismanagement, fraud on the court, and a conspiracy among the Defendants does not save her case. *Rooker-Feldman* precludes federal jurisdiction "no matter how erroneous or unconstitutional the state court judgment may be" because the Supreme Court of the United States is the only federal court with jurisdiction to review a state-court judgment. *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000); *see also Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 781 (7th Cir. 2024) ("*Rooker–Feldman* applies even where the federal plaintiff alleges that the state courts that injured her were corrupt."). This reasoning applies equally to Obi's leading argument, repeated throughout her filings, that the Illinois proceedings were void from the start because they were conducted without jurisdiction under the UCCJEA. (*See, e.g.*, Dkt. 46 at 3; Dkt. 50 at 11; Dkt. 78 at 10–11); *Abrahamson v. Ill. Dep't of Fin. & Pro. Regul.*, 594 F. App'x 307, 311 (7th Cir. 2014) (quoting *Doe v. Mann*, 415 F.3d 1038, 1042 n.6 (9th Cir. 2005)) ("*Rooker–Feldman* applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment."). While the Court recognizes that Obi has pled alleged constitutional violations in broad strokes, under myriad federal statutes, each is dependent on the state court ruling and would require this Court to vacate that ruling. *Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir. 2017). That is exactly what the *Rooker-Feldman* doctrine prohibits. Obi's remedies lie in Illinois state court or, perhaps, the Supreme Court of United States, but certainly not here. *See Kinzy v. Howard & Howard, PLLC*, 2019 WL 95152, at *3 (N.D. Ill. Jan. 3, 2019).

7

Accordingly, Obi's claims arising out of the underlying state custody order, and the Defendants' preceding conduct that contributed to that order, are dismissed without prejudice for lack of subject matter jurisdiction. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438–39 (7th Cir. 2004) ("When the *Rooker-Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits.").

## II. General Principles of Abstention

The Court now turns to Obi's second category of claims. Separate from the custody order, she accuses Bender and Orellana of engaging in a string of unlawful conduct starting in 2024 when they "resumed activities in the case" despite there being no motion to reopen proceedings or a court order allowing for additional litigation. (*See, e.g.*, Dkt. 50 at 6–8). She seeks declaratory and injunctive relief voiding all post-judgment filings, orders, and petitions, and permanently prohibiting "any dismissed GAL, counsel or state officer" from further engaging in the state matter. (Dkt. 50 at 11). Obi also seeks an investigation into why the Cook County court declined to "enforce closure and protect procedural integrity." (*Id.*)

First, the factual predicate from which Obi proceeds is misguided. It appears to be her understanding that the December 22, 2022 order granting Orellana custody completely ended the state case and thus forbid Bender, Orellana, or anyone else from participating further. (*See* Dkt. 50 at 5–8 (section titled "Improper Reentry and Jurisdictional Misuse (2023–2025 Timeline)). But there is nothing untoward about the custody docket remaining open and active after the state court judge's final allocation of parental responsibilities. *See supra* Part I. State domestic relations cases

8

often remain open for many years until the minor child at the center of those proceedings reaches the age of 18—for example, to ensure compliance with the custody order or enforce child support obligations. *See Woodward*, 997 F.3d at 725 ("[S]tate court custody proceedings, or, at least oversight by the state court, will be continual until the children reach 18 years of age."). Indeed, the ongoing action in state court here seems to center on child support payments and arrearages. (Dkt. 72 at 23). The state case is very much still ongoing, as the docket makes clear, with scheduled status hearings and numerous filings from both parties, including Obi herself. (*Id.* at 17–24).

      The Court declines to interfere with these ongoing state court proceedings. Because this second class of allegations post-dates the December 22, 2022 order—the only final judgment to have been entered in the state matter to date—the *Rooker-Feldman* doctrine does not apply. Nor do other specific principles of abstention. *Woodward*, 997 F.3d at 723 (discussing why, in a highly factually analogous case to this one, *Younger* abstention and the domestic-relations exception to federal jurisdiction did not apply). Be that as it may, "[t]o insist on literal perfection" when it comes to identifying a basis on which a federal court may choose to "remain on the sidelines" due to ongoing state court proceedings "risks a serious federalism infringement." *Id.* Obi and Orellana's son remains under the age of eighteen, and the custody proceedings remain ongoing. The reason for those ongoing proceedings is to implement and ensure compliance with a state custody order that this Court has no jurisdiction to review. For this Court to involve itself in those proceedings would make little sense and risk an "interference with and disruption of local family law . . . a robust area of law traditionally reserved for state and local government." *Id.* Accordingly, the Court declines to exercise jurisdiction over Obi's post-judgment claims of procedural misconduct and abuse based on the "regard for federal-state relations." *Courthouse News Serv. v.*

9

*Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

In summary, the Court dismisses the entirety of Obi's Complaint without prejudice. Because the grounds for dismissal are equally applicable to all Defendants—including those who have neither filed an appearance or moved to dismiss—the Court dismisses Obi's Complaint as to the Bender Defendants, the Leving Defendants, and all nonmoving Defendants. *See Mac Naughton v. Hamelech*, 338 F. Supp. 3d 722, 729 (N.D. Ill. 2018).

## CONCLUSION

For the above reasons, the Bender Defendants' and the Leving Defendants' Motions to Dismiss [71] [73] are granted. Plaintiff's Complaint [46] [50] is dismissed without prejudice.

Virginia M. Kendall
United States District Judge

Date: November 18, 2025